## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA *et al.* *ex rel.* FRANK GARCIA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NOVARTIS AG, *et al.*, <br><br> Defendants. | No. 06-cv-10465-WGY <br> (Consolidated action) |
| UNITED STATES OF AMERICA *et al.* *ex rel.* STEPHEN FAUCI, <br><br> Plaintiffs, <br><br> v. <br><br> GENENTECH, INC., *et al.*, <br><br> Defendants. | No. 10-cv-11728-WGY <br> (Consolidated action) |
| UNITED STATES OF AMERICA *ex rel.* ALLISON KELLY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NOVARTIS PHARMACEUTICALS CORPORATION, *et al.*, <br><br> Defendants. | No. 12-cv-10962-WGY <br> (Consolidated action) |

## DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINTS OF RELATORS GARCIA, FAUCI, AND KELLY

# TABLE OF CONTENTS

TABLE OF AUTHORITIES

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 2

    A.    Xolair® ................................................................................................................ 2

    B.    The 2004 Rediehs Action alleging illegal promotion of Xolair® ......................... 3

    C.    The 2006 Fauci Employment Action alleging illegal promotion of Xolair® ......... 4

    D.    The 2006 Garcia qui tam action and the ensuing Government investigation ......... 4

    E.    The 2010 Fauci qui tam action................................................................................ 6

    F.    The government declinations and Kelly's dismissal of her claims......................... 7

    G.    The 2012 Kelly qui tam action................................................................................ 7

    H.    The unsealing of the three qui tam actions ............................................................ 8

ARGUMENT...................................................................................................................... 10

I.    The Court lacks jurisdiction over the 2010 Fauci Action and the 2012 Kelly
Action because they are barred by the first-to-file rule .................................................... 11

    A.    The 2010 Fauci Action alleges the same essential facts and elements of
fraud as the pending 2006 Garcia Action ............................................................ 15

    B.    The 2012 Kelly Action alleges the same essential facts and elements of
fraud as the pending 2006 Garcia Action and the pending 2010 Fauci
Action.................................................................................................................... 16

II.    The Court lacks jurisdiction over all three actions under the public disclosure bar ......... 17

    A.    The Relators' allegations are substantially similar to the ones that were
publicly disclosed in the prior wrongful termination actions ............................... 18

    B.    None of the Relators qualifies as an original source............................................ 21

        1.    Garcia does not qualify as an original source because he has not
demonstrated direct and independent knowledge of the information
on which his fraud allegations are based .................................................. 22

2. Fauci does not qualify as an original source because he has not demonstrated direct and independent knowledge of the information on which his fraud allegations are based .................................................... 25

3. Kelly does not qualify as an original source because she has not demonstrated direct and independent knowledge of the information on which her fraud allegations are based .................................................... 25

III. The Court should dismiss all three complaints because Relators failed to plead fraud with particularity in accordance with Rule 9(b) ...................................................... 27

IV. The Court should dismiss Relators Garcia and Kelly's claims of conspiracy and reverse false claims violations for failure to state a claim under Rule 12(b)(6) ............... 33

A. Relators Garcia and Kelly's conspiracy claims are fatally deficient and should be dismissed ............................................................. 33

B. Relators Garcia And Kelly's claims of reverse false claims violations are fatally deficient and should be dismissed ............................................... 34

V. The Court should dismiss all three actions with prejudice. ............................................. 35

VI. The Court should dismiss, or in the alternative decline to exercise jurisdiction over, Relators' state law claims ...................................................................... 35

CONCLUSION ..................................................................................... 37

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allison Engine v. United States ex rel. Sanders,*
    553 U.S. 662 (2008)................................................................27-28, 33-34

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................33

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................33

*Doyle v. Hasbro, Inc.,*
    103 F.3d 186 (1st Cir. 1996)................................................27

*Figueroa v. Rivera,*
    147 F.3d 77 (1st Cir. 1998)..................................................11

*Gagliardi v. Sullivan,*
    513 F.3d 301 (1st Cir. 2008)................................................33

*Hughes Aircraft Co. v. United States ex rel. Schumer,*
    520 U.S. 939 (1997)................................................................17-18

*McIsaac v. Ford,*
    193 F. Supp. 2d 382 (D. Mass. 2002)................................11

*New York v. Amgen Inc.,*
    652 F.3d 103 ........................................................................36

*Rockwell Int'l Corp. v. United States,*
    549 U.S. 457 (2007)................................................................26

*Rossi v. Gemma,*
    489 F.3d 26 (1st Cir. 2007)..................................................36-37

*United States ex rel. Banigan v. Organon USA Inc.,*
    883 F. Supp. 2d 277 (D. Mass. 2012)................................29

*United States ex rel. Bartz v. Ortho-McNeil Pharm., Inc.,*
    856 F. Supp. 2d 253 (D. Mass. 2012)................................20, 23-24

*United States ex rel. Black v. Health & Hosp. Corp. of Marion Cnty.,*
    No. 11-1726, 2012 WL 3538820 (4th Cir. Aug. 17, 2012)................................19

*United States ex rel. Booker v. Pfizer, Inc.,*
   No. 10-cv-11166, 2014 WL 1271766 (D. Mass. Mar. 26, 2014) .............................. 18, 34-35

*United States ex rel. Carpenter v. Abbott Labs., Inc.,*
   723 F. Supp. 2d 395 (D. Mass. 2010) .................................................................35

*United States ex rel. Ciaschini v. Ahold USA, Inc.,*
   282 F.R.D. 27 (D. Mass. 2012).........................................................................34

*United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*
   719 F.3d 31 (1st Cir. 2013)................................................................... 21, 26, 31-32

*United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.,*
   579 F.3d 13 (1st Cir. 2009).........................................................................11-12, 30-32

*United States ex rel. Estate of Cunningham v. Millennium Labs. of Cal., Inc.,*
   713 F.3d 662 (1st Cir. 2013)................................................................ 22, 24, 33-34

*United States ex rel. Franklin v. Parke-Davis,*
   No. 96-11651, 2003 WL 22048255 (D. Mass. Aug. 22, 2003) ...............................32

*United States ex rel. Gagne v. City of Worcester,*
    565 F.3d 40 (1st Cir. 2009)..........................................................................33, 35

*United States. ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc.,*
   436 F.3d 726 (7th Cir. 2006) ..........................................................................19

*United States ex rel. Heineman-Guta v. Guidant Corp.,*
   718 F.3d 28 (1st Cir. 2013)........................................................................12, 15, 17

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.,*
   360 F.3d 220 (1st Cir. 2004)......................................................................... 27-28, 35

*United States ex rel. Keeler v. Eisai, Inc.,*
   No. 13-10973, 2014 WL 2595592 (11th Cir. June 11, 2014)...................................28

*United States ex rel. LaCorte v. SmithKline Beechem Clinical Labs.,*
   149 F.3d 227 (3d Cir. 1998)............................................................................17

*United States ex rel. May v. Purdue Pharma L.P.,*
   737 F.3d 908 (4th Cir. 2013) ...........................................................................17

*United States ex rel. Nowak v. Medtronic, Inc.,*
   806 F. Supp. 2d 310 (D. Mass. 2011) ......................................................11-12, 20, 22, 24-25

*United States ex rel. Ondis v. City of Woonsocket,*
   587 F.3d 49 (1st Cir. 2009)........................................................................... 18-21

*United States ex rel. Paulos v. Stryker Corp.*,
  No. 11-cv-0041, 2013 WL 2666346 (W.D. Mo. June 12, 2013)..........................................18

*United States ex rel. Poteet v. Bahler Med., Inc.*,
  619 F.3d 104 (1st Cir. 2010) ..................................................................................... 18, 20-21

*United States ex rel. Poteet v. Lenke*,
  604 F. Supp. 2d 313 (D. Mass. 2009) ...................................................................................19

*United States ex rel. Poteet v. Medtronic, Inc.*,
  552 F.3d 503 (6th Cir. 2008) ................................................................................................19

*United States ex rel. Quinn v. Omnicare Inc.*,
  382 F.3d 432 (3d Cir. 2004)..................................................................................................34

*United States ex rel. Rost v. Pfizer, Inc.*,
  507 F.3d 720 (1st Cir. 2007)................................................................................ 2, 11, 27, 30-32

*United States ex rel. Schubert v. All Children's Health Sys., Inc.*,
  941 F. Supp. 2d 1332 (M.D. Fla. 2013) ................................................................................24

*United States ex rel. Schumann v. AstraZeneca PLC*,
  No. 03-5423, 2010 WL 4025904 (E.D. Pa. Oct. 13, 2010) ..................................................23

*United States ex rel. Schumann v. AstraZeneca Pharm. LP*,
  No. 03-5423, 2013 WL 300745 (E.D. Pa. Oct. 13, 2013) ................................................ 24-25

*United States ex rel. Thomas v. Siemens AG*,
  708 F. Supp. 2d 505 (E.D. Pa. 2010) ....................................................................................34

*United States ex rel. Walsh v. Eastman Kodak Co.*,
  98 F. Supp. 2d 141 (D. Mass. 2000) .....................................................................................35

*United States ex rel. Wilson v. Bristol Meyers Squibb, Inc.*,
  No. 13-1948, 2014 WL 1688934 (1st Cir. Apr. 30, 2014) ..............................................12, 16

*United States ex rel. Worsfold v. Pfizer Inc.*,
  No. 09-11522, 2013 WL 6195790 (D. Mass. Nov. 22, 2013) .....................................27-28, 32

## STATUTES

28 U.S.C. § 1367...............................................................................................................36-37

31 U.S.C. § 3729.......................................................................................................... 1, 5, 33-35

31 U.S.C. § 3730 ..............................................................................................1-2, 11, 17, 20-22, 24

31 U.S.C. § 3731 ...............................................................................................26

42 U.S.C. § 1320a-7b ("AKS") ........................................................................27

Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.* ..............................27

Health Insurance Portability and Accountability Act of 1996
    Pub. L. 104-191, 110 Stat. 1936 .................................................................27

Fraud Enforcement Recovery Act,
    Pub. L. No. 111-21, 123 Stat. 1617 ...............................................................5

Patient Protection and Affordable Care Act,
    Pub. L. No. 111-148, 124 Stat. 119, 901 ....................................................17

Tex. Hum. Res. Code Ann. § 36.104 ................................................................36

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 4 ....................................................................11

Federal Rule of Civil Procuedure 9 ................................................... 2, 27-32, 35

Federal Rule of Civil Procedure 12 ..................................................................33

District of Massachusetts Local Rule 4.1 .........................................................11

*Fauci v. Genentech, Inc., et al.,*
    Case No. 06-cv-10061 (D. Mass.) ..................................... 4, 10, 15, 18-19, 21

*Rediehs v. Genentech, Inc.,*
    Case No. 04-cv-08357 (N.D. Ill.) ................................................ 3, 10, 18-21

U.S. Food & Drug Administration, *available at*
    http://www.fda.gov/downloads/drugs/drugsafety/ucm089829.pdf ................. 2-3

Defendants Novartis Pharmaceuticals Corporation ("NPC") and Genentech, Inc.

("Genentech") (collectively, "Defendants")[1] move to dismiss these three consolidated actions,

with prejudice, on the following grounds:

## INTRODUCTION

This *qui tam* case involves three Relators, Frank Garcia, Stephen Fauci, and Allison

Kelly, who filed successive complaints in 2006, 2010, and 2012, respectively, alleging that

Defendants illegally promoted the asthma medication Xolair® in violation of the False Claims

Act, 31 U.S.C. § 3729 *et seq.* ("FCA").  Relators' allegations—which have already cycled

through multiple sets of plaintiffs' lawyers and repeated declinations to intervene by the United

States and dozens of States—are duplicative of each other as well as allegations from complaints

that pre-date Relators' filings.  Accordingly, the Court lacks jurisdiction over all three

complaints under the FCA.[2]

To begin with, the Court lacks jurisdiction over both later-filed cases—Case Nos. 10-cv-

11728-WGY (the "2010 Fauci Action") and 12-cv-10962-WGY (the "2012 Kelly Action")—

under the FCA's "first-to-file" rule, which provides that, once a *qui tam* action is filed, "no

person other than the Government may intervene or bring a related action based on the facts

underlying the pending action."  31 U.S.C. § 3730(b)(5).  Fauci and Kelly cannot reasonably

---

[1] Defendants Novartis Corporation and Roche Holdings, Inc. have filed a separate motion to dismiss the complaints of Relators Fauci and Kelly, and incorporate therein all of the arguments for dismissal set forth in this memorandum.

[2] Yesterday, on June 16, 2014, Relator Fauci voluntarily dismissed with prejudice all claims as to himself in Case No. 10-cv-11728-WGY (the "2010 Fauci Action"), and without prejudice as to the United States and the plaintiff states.  *See* No. 06-cv-10465-WGY (the "2006 Garcia Action), ECF No. 120.  Fauci is seeking consent from the United States and the plaintiff states to this dismissal, which he anticipates receiving within the next few weeks.  *Id.*  In the event that Fauci is unable to obtain these consents within a reasonable period of time, Defendants reserve the right to move to dismiss the 2010 Fauci Action on additional grounds, including that Fauci's claims are jurisdictionally barred.

dispute that their actions allege the same essential facts as those in the pending first-filed action, Case No. 06-cv-10465-WGY (the "2006 Garcia Action").  In fact, Relators have themselves conceded that the three cases are "virtually identical" and "involv[e] the same basic facts and issues."  2006 Garcia Action, ECF No. 70, at 6.

In addition, the Court lacks jurisdiction over all three actions under the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4)(A).  At least two lawsuits—one in 2004, the other in 2006—publicized the allegations that the Relators later repeated in their *qui tam* complaints. And none of the Relators can claim the benefit of the "original source" exception to the public disclosure bar, because none has alleged "direct and independent knowledge" of the purported fraud.

Finally, even assuming the three complaints withstand their jurisdictional infirmities, the Court should dismiss all three actions because the complaints, replete with conclusory and broad allegations, fall well short of Rule 9(b)'s heightened pleading requirements.  The First Circuit requires relators to allege "evidence to strengthen the inference of fraud beyond possibility," *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 733 (1st Cir. 2007), and the complaints here do not come close to meeting this standard.

These cases are defective on their face and have already burdened the Court's docket for more than eight years.  The Court should dismiss them now, with prejudice.

## BACKGROUND

### A.   Xolair®

Xolair® is the brand name for omalizumab, a humanized monoclonal antibody that was the first medication approved by the FDA to treat moderate to severe persistent allergic asthma in patients twelve and older whose symptoms are inadequately controlled with inhaled corticosteroids.  *See Xolair Medication Guide*, U.S. Food & Drug Administration (March 2014),

*available at* http://www.fda.gov/downloads/drugs/drugsafety/ucm089829.pdf; *see also* 2012

Kelly Action, ECF No. 1 ¶¶ 141, 170, 180 (the "2012 Kelly Compl."). Genentech and NPC co-

promote Xolair® in the United States. *See Xolair Medication Guide*; 2012 Kelly Compl. ¶ 2;

2010 Fauci Action, ECF No. 1 ¶ 105 (the "2010 Fauci Compl."); 2006 Garcia Action, ECF No. 1

¶ 28 (the "2006 Garcia Compl."). Relators are former sales representatives at NPC or Genentech

who promoted Xolair® sometime between 2003 and late 2006 in their limited sales territories in

New York or Boston.

### B.     The 2004 Rediehs Action alleging illegal promotion of Xolair®

In 2004, James Rediehs, a former Xolair® sales representative, sued Genentech for

wrongful termination. *See Rediehs v. Genentech, Inc.*, Case No. 04-cv-08357 (N.D. Ill.) (the

"2004 Rediehs Action"), ECF No. 1 (the "2004 Rediehs Compl.").[3] Rediehs alleged that

Genentech had retaliated against him for raising concerns about "off-label marketing practices

and other illegal marketing strategies" regarding Xolair®. *Id.* ¶ 1. His complaint accused

Genentech of (1) illegally promoting Xolair® for off-label uses, *see, e.g., id.* ¶¶ 17-20; (2)

encouraging doctors to use improper billing codes for Xolair® to obtain higher reimbursement—

a practice known as "upcoding," *see, e.g., id.* ¶¶ 14, 21-23; (3) encouraging "Disproportionate

Share Hospitals" enrolled in the 340B Drug Discount Program to bill Medicare at inflated rates

for Xolair®, *see, e.g., id.* ¶ 16; and (4) paying honoraria and other alleged "kickbacks" to induce

doctors to prescribe Xolair®, *see, e.g., id.* ¶¶ 24-26. Rediehs claimed that Genentech had

violated the FCA by terminating him after he confronted management about these practices. *Id.*

at ¶¶ 40-45. Rediehs and Genentech settled in 2005. *See* 2004 Rediehs Action, ECF No. 22.

---

[3] For convenience, Defendants have attached the original complaint in the 2004 Rediehs Action
as Exhibit A to the Declaration of Matthew O'Connor.

### C.     The 2006 Fauci Employment Action alleging illegal promotion of Xolair®

In January 2006, Stephen Fauci—who would later become a Relator in one of the suits now before the Court—sued Genentech for wrongful termination.  *See Fauci v. Genentech, Inc., et al.*, Case No. 06-cv-10061 (D. Mass.) (the "2006 Fauci Employment Action").[4]  Fauci repeated many of the allegations that Rediehs had made two years earlier.  Fauci's original complaint accused Genentech of "encourag[ing] its sales representatives to engage in unlawful sales practices to improve Xolair sales," including paying kickbacks to doctors and illegally completing Statement of Medical Necessity ("SMN") forms.[5]  *See* 2006 Fauci Employment Action, ECF No. 1 ¶¶ 19, 41, 47 (the "2006 Fauci Employment Compl.").  In amended complaints filed in May 2006 and March 2007, Fauci also accused Genentech of illegally marketing Xolair® for "off-label" uses, encouraging doctors to upcode, and engaging in a sales practice known as "marketing the spread."  *See* 2006 Fauci Employment Action, ECF Nos. 23, 31.  Fauci's action was dismissed in 2008.  *See* 2006 Fauci Employment Action, ECF Nos. 50, 51.

### D.     The 2006 Garcia *qui tam* action and the ensuing Government investigation

In March 2006, Relators Frank Garcia and Allison Kelly filed the first of the three *qui tam* suits now before the Court.[6]  *See* 2006 Garcia Action.[7]  Garcia had been a Xolair® sales

---

[4] For convenience, Defendants have attached the original complaint in the 2006 Fauci Employment Action as Exhibit B to the Declaration of Matthew O'Connor.

[5] An SMN is a form containing a patient's relevant medical information that is completed and submitted by a physician in order for the patient's Xolair® to be reimbursed by the insurer.  *See* 2012 Kelly Compl. ¶ 193; 2010 Fauci Compl. ¶ 120; 2006 Garcia Compl. ¶ 32.

[6] Defendants' description of the procedural history as to the three *qui tams* at issue here is based on their review of docket entries that have been unsealed to date.  Defendants had no knowledge of most of the events surrounding the *qui tam* actions until March 2014, when many of the docket entries became unsealed.

representative for Genentech in New York City from June 2003 through May 2004.  2006 Garcia

Compl. ¶¶ 22-24, 40.  His complaint parrots the allegations that Rediehs and Fauci had

previously publicized.  In particular, it accuses Genentech and NPC of (1) illegally promoting

Xolair® for off-label indications, *see*, *e.g.*, *id.* ¶¶ 30-31; (2) encouraging sales representatives to

improperly complete and influence SMN forms, *see, e.g., id.* ¶¶ 32-37; (2) paying kickbacks to

doctors, *see, e.g., id.* ¶¶ 38-39; and (3) improperly targeting sales to Disproportionate Share

Hospitals, *see, e.g., id.* ¶¶ 40-42.

Garcia asserts four causes of action under the FCA:  (i) presenting false claims, in

violation of 31 U.S.C. § 3729(a)(1); (ii) making, using, or causing to be made or used a false

statement material to false claims, in violation of 31 U.S.C. § 3729(a)(2); (iii) conspiracy to

present false claims or make or use false statements material to false claims, in violation of

§ 3729(a)(3); and (iv) avoiding or decreasing an obligation to pay the government in violation of

§ 3729(a)(7).[8]  *See* 2006 Garcia Compl. ¶¶ 46-57.  He also asserts claims under analogous

statutes of eighteen States and Commonwealths.  *Id.* ¶¶ 58-268; *see also* 2006 Garcia Action,

ECF No. 17.

As discussed further below, however, Garcia's complaint is lacking in critical detail.  He

fails to identify anyone at NPC or Genentech who engaged in the alleged fraudulent conduct or

---

[7] Although Garcia and Kelly filed this action together, Defendants refer to it as the "Garcia" action because, as explained below, Kelly later withdrew from it, leaving Garcia as the sole relator.

[8] Congress amended the FCA in 2009 with the enactment of the Fraud Enforcement Recovery Act ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617.  FERA, with one exception, *see* 123 Stat. at 1625 (noting that the amendment to 31 U.S.C. § 3729(a)(2) takes effect as of June 7, 2008), took effect on May 20, 2009, after the period that Relators were employed by Defendants.  FERA re-numbered the statutory provisions under which Relators have brought suit.  For ease of reference, and consistent with Relators' usage in their Complaints, this memorandum refers to the provisions in question using their pre-FERA citations.

any physician to whom Xolair® was promoted unlawfully, let alone any false claims submitted. Nor does he allege any factual or statistical evidence from which this Court could reasonably infer that false claims were submitted.

After Garcia filed his *qui tam* action under seal, the United States began an investigation, and in January 2011, declined to intervene. *See* 2006 Garcia Action, ECF No. 38.

### E.    The 2010 Fauci *qui tam* action

In 2010, while the Government investigation was underway, Stephen Fauci filed a *qui tam* suit against Genentech, NPC, and Genentech's affiliate Roche Holdings, Inc. ("Roche"). *See* 2010 Fauci Action. Like Garcia, Fauci had been a Xolair® sales representative for Genentech, working in Boston from May 2000 through April 2005. 2010 Fauci Compl.¶ 37. His *qui tam* complaint rehashes the allegations he had previously aired in his wrongful termination case. Specifically, it alleges that Genentech, NPC, and Roche illegally promoted Xolair® for off-label uses and encouraged sales representatives to improperly complete and influence SMN forms. *Id.* ¶¶ 111-12, 116-17, 119, 121. Like Garcia, Fauci asserts claims under the FCA and various state analogues for the presentment of false claims and for making, using, or causing to be made or used a false statement material to false claims. *See id.* ¶¶ 134-40. And, like Garcia's, Fauci's complaint is devoid of critical factual details, including the identity of anyone at NPC, Genentech, or Roche who purportedly engaged in any unlawful promotional activity regarding Xolair®, any physician to whom Xolair was promoted illegally or any false claims submitted—or any other indicia leading to an inference that false claims were actually submitted.

At the United States' request, in November 2010, the 2010 Fauci Action was administratively consolidated with the 2006 Garcia Action. *See* 2006 Garcia Action, ECF Nos. 63, 86.

### F.     The government declinations and Kelly's dismissal of her claims

In January 2011, the United States declined to intervene in the 2006 Garcia Action and the 2010 Fauci Action.  *See id.* ECF No. 38.  The majority of the States that the Relators had named as plaintiffs subsequently declined as well.[9]  2006 Garcia Action, ECF Nos. 41, 43.

In August 2011, Relator Allison Kelly sought, and received, permission to dismiss her complaint—*i.e.,* her part of the 2006 Garcia Action.  2006 Garcia Action, ECF No. 45.  Judge Gertner, who was then presiding over the case, ordered Garcia to "file a complaint within 60 days, removing all references to Relator Allison Kelly, and the subsequently filed case shall be the operative complaint for purposes of further litigation."  2006 Garcia Action, ECF No. 51 ¶ 3.  Garcia, however, never complied with this order.  Unlike Kelly, Garcia and Fauci maintained their actions after the government plaintiffs declined to intervene.

### G.     The 2012 Kelly *qui tam* action

In June 2012, Relator Kelly filed a new *qui tam* suit, represented by the same counsel as Garcia and Fauci.  *See* 2012 Kelly Action.  Kelly had been a Xolair® sales representative for NPC from 2003 until she left company in 2006, working in the Bronx and Westchester, New York.  2012 Kelly Compl. ¶ 52.  Like the other Relators, Kelly alleges that Defendants illegally promoted Xolair® by (1) marketing "off-label" uses; (2) making improper payments, *i.e.,* kickbacks, to physicians; (3) aiding and encouraging doctors to falsify SMNs; (4) encouraging doctors to upcode; (5) improperly targeting Disproportionate Share Hospitals; and (6) marketing the spread.  *Id.* ¶¶ 1, 191-297.  Kelly's causes of action under the FCA mirror those of the other Relators and she, like them, also asserts claims under various state FCAs.  Also like the other

---

[9] To date, only two states named as plaintiffs in the 2010 Fauci Action, Montana and New Jersey, have not indicated their intent to intervene, and no state has indicated that it intends to intervene.

Relators', Kelly's Complaint is devoid of factual details regarding the purportedly unlawful promotional activity or any false claims submitted as a result of such activity.

### H.     The unsealing of the three *qui tam* actions

In October 2012, while their cases were still under seal and unknown to Defendants, all three Relators—now represented by the same attorneys—moved to consolidate their cases and for leave to file "a single operative complaint brought by all three Relators." *See* 2006 Garcia Action, ECF No. 70 at 5.  In support, they argued that their separate suits are "virtually identical" and "involve the same basic facts and issues[.]" *Id.* at 6.  The Court declined to rule on this motion.  2006 Garcia Action, ECF No. 83.

The United States subsequently declined to intervene in the 2012 Kelly Action, as it had declined to do in the 2006 Garcia Action and 2010 Fauci Action, and the States that Kelly named as plaintiffs likewise declined to intervene.[10]  In May 2013, Judge Tauro, who was then presiding over the case, ordered Kelly's complaint unsealed.  2012 Kelly Action, ECF No. 6.  Kelly, however, failed to serve the complaint on any Defendant until eight months later, in January 2014.  *See* 2012 Kelly Action, ECF Nos. 10-15.

Also in January 2014, the United States moved to reopen the 2006 Garcia Action and the 2010 Fauci Action, and to partially lift the seal in those cases.  2006 Garcia Action, ECF No. 85.  The Government argued that unsealing was necessary because "another False Claims Act lawsuit currently pending in this district [*i.e.*, the 2012 Kelly Action], could be subject to dismissal under the False Claims Act's 'first to file' rule." *Id.* at 2.  The Government explained that Kelly's 2012 complaint "is based on the same facts underlying the complaints in this consolidated action"—

---

[10] The record in the 2012 Kelly Action remains partially sealed, but it appears that the United States and all of the plaintiff states except Indiana declined to intervene sometime in 2013.  *See* 2012 Kelly Action, ECF No. 6.  To date, Indiana has not indicated its intent to intervene.

*i.e.*, Garcia's 2006 complaint and Fauci's 2010 complaint.  *Id.*  Judge Tauro granted the United States' motion on January 23, 2014 and ordered the 2006 Garcia Action and 2010 Fauci Action reopened and partially unsealed.  2006 Garcia Action, ECF No. 88.

In March 2014, the Relators filed a "Consolidated First Amended Complaint" naming Garcia, Fauci, and Kelly as Relators in a single action—despite the fact that the Court had not ruled on the Relators' October 2012 motion for leave to file this pleading.  2006 Garcia Action, ECF No. 90.  Defendants opposed the Relators' attempt to amend, and in April 2014 this Court denied the motion and struck Relators' Consolidated First Amended Complaint.  2006 Garcia Action, ECF No. 114.  The Court consolidated the three actions "for pre-trial and administrative purposes only, such that the three *qui tam* complaints . . . remain separate [and] retain their separate identities[.]"  *Id.* ¶ 3.  Thus, the operative complaints in these actions are (1) Garcia's complaint filed March 14, 2006, 2006 Garcia Action, ECF No. 1, as amended on December 19, 2007, 2006 Garcia Action, ECF No. 17; (2) Fauci's complaint filed October 8, 2010, 2010 Fauci Action, ECF No. 1; and (3) Kelly's complaint filed June 8, 2012, 2012 Kelly Action, ECF No. 1.

In May 2014, new counsel appeared for all three Relators, and the attorneys who had filed appearances in 2012 withdrew.  *See* 2006 Garcia Action, ECF No. 116.  On June 16, 2014, Fauci voluntarily dismissed the 2010 Fauci Complaint with prejudice as to himself, and awaits consent from the United States and the plaintiff states.  *See* 2006 Garcia Action, ECF No. 120.

*     *     *

The chart below summarizes the relevant events in the above actions alleging the improper promotion of Xolair®.

| Year | Month | Event Description |
|------|-------|-------------------|
| 2004 | December | Rediehs files wrongful termination complaint. |
| 2006 | January | Fauci files wrongful termination complaint. |
| | March | Garcia and Kelly file the first *qui tam* complaint. |
| 2007 | December | Garcia and Kelly amend their *qui tam* complaint. |
| 2010 | October | Fauci files his *qui tam* complaint; his case is subsequently administratively consolidated with the Garcia/Kelly action. |
| 2011 | January | United States declines to intervene. |
| | August | Kelly dismisses herself from the *qui tam* action. |
| 2012 | June | Kelly re-files a separate *qui tam* action. |
| | October | Garcia and Fauci file a motion to amend their complaint and consolidate with the re-filed Kelly action. |
| 2013 | May | Kelly complaint ordered unsealed. |
| | June | Garcia and Fauci cases administratively closed. |
| 2014 | January | United States moves to reopen the Garcia and Fauci cases to alert Defendants to potential "first-to-file" defense in the Kelly action. |
| | March | Garcia and Fauci cases unsealed. |
| | April | Relators' motion to amend denied; cases consolidated for pre-trial and administrative purposes only. |
| | June | Fauci voluntarily dismisses his complaint with prejudice as to himself and seeks consent from United States and plaintiff states. |

## ARGUMENT

Although the FCA rewards insiders who sound the alarm, it strips the Court of

jurisdiction over *qui tam* complaints that merely echo one. Two jurisdictional bars apply here.

10

First, the Court lacks jurisdiction over the 2010 Fauci Action and the 2012 Kelly Action under

the "first-to-file" rule, 31 U.S.C. § 3730(b)(5), because—as the Relators have conceded—the two

later-filed actions are based on the same facts that underlie the earlier-filed ones.  Second, the

Court lacks jurisdiction over all three of the Relators' actions under the "public disclosure" bar,

31 U.S.C. § 3730(e)(4)(A), because two lawsuits disclosed the Relators' allegations before they

filed their *qui tam* actions, and none of the Relators is an "original source" of those allegations.[11]

In addition, even if the Court were to exercise jurisdiction, all three complaints are fatally

defective because they fail to plead any alleged fraud with the particularity that First Circuit law

requires.  In a line of cases that includes *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720

(1st Cir. 2007), and *United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.,* 579 F.3d 13 (1st

Cir. 2009) ("*Duxbury I*"), the First Circuit has established minimum standards for what relators

must plead in cases like these, and the complaints here fall well short of them.

## I.     The Court lacks jurisdiction over the 2010 Fauci Action and the 2012 Kelly Action because they are barred by the first-to-file rule.

The first-to-file rule provides that "[w]hen a person brings an [FCA *qui tam* action], no

person other than the Government may intervene or bring a related action based on the facts

underlying the pending action."  31 U.S.C. § 3730(b)(5).  This rule "serves the dual purpose of

preventing parasitic claims based on allegations already available to the government and of

avoiding duplicative suits."  *United States ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310,

---

[11] The 2012 Kelly Action should also be dismissed because Relator Kelly failed to serve Defendants with a summons and a copy of the complaint until January 9-10, 2014, *see* 2012 Kelly Action, ECF Nos. 6, 10-14, over 240 days after the service deadline had passed, *see* Fed. R. Civ. P. 4(m).  For this reason alone, Kelly's complaint should be dismissed for insufficient service of process.  *See* District of Massachusetts Local Rule 4.1(b) (requiring dismissal if Plaintiff fails to make a showing of good cause on or before the tenth day following the expiration of the 120 day period); *Figueroa v. Rivera*, 147 F.3d 77, 83 (1st Cir. 1998); *McIsaac v. Ford*, 193 F. Supp. 2d 382, 384 (D. Mass. 2002).

334 (D. Mass. 2011) (citing *Duxbury I*, 579 F.3d at 32-33).  The rule is jurisdictional and

"exception-free."  *See Duxbury I*, 579 F.3d at 16, 33.

     A subsequent FCA complaint that "'states all the essential facts of a previously-filed

[complaint]' or 'the same elements of a fraud described in an earlier suit'" is jurisdictionally

barred under the first-to-file rule.  *United States ex rel. Wilson v. Bristol Meyers Squibb, Inc.*,

No. 13-1948, 2014 WL 1688934, at *5 (1st Cir. Apr. 30, 2014) (quoting *Duxbury I*, 579 F.3d at

32).  The complaints need not be identical for the rule to apply; the first-to-file rule bars a later

complaint "even if that complaint 'incorporates somewhat different details.'"  *United States ex*

*rel. Heineman-Guta v. Guidant Corp.*, 718 F.3d 28, 34 (1st Cir. 2013) (quoting *Duxbury I*, 579

F.3d at 32).  This is because once the Government has "sufficient notice to launch [an]

investigation, . . . [a] later-filed complaint that mirrors the essential facts as the pending earlier-

filed complaint does nothing to help reduce fraud of which the government is already aware."

*Heineman-Guta*, 718 F.3d at 35-36; *Wilson*, 2014 WL 1688934, at *5-6 (finding that the first *qui*

*tam* provided the government adequate notice and barred the second *qui tam*, despite the fact that

the off-label schemes in the two complaints related to different diseases and symptoms).

     Here, there can be no reasonable dispute that the 2010 Fauci Action and 2012 Kelly

Action allege the same essential facts and elements of fraud as the 2006 Garcia Action.  Not only

are the complaints' factual allegations remarkably similar, but the Relators have themselves

conceded—as they must—that the actions are "virtually identical" and "involve the same basic

facts and issues."  2006 Garcia Action, ECF No. 70 at 5-6.  It is also significant that after

declining to intervene in any of the cases, the United States moved to unseal the two earlier

actions expressly to enable Defendants to assert the first-to-file rule.  *See* 2006 Garcia Action,

ECF No. 85 (noting that the 2012 Kelly Action is "based on the same facts underlying the

[earlier-filed 2006 Garcia and 2010 Fauci] complaints," and moving to unseal those complaints, in part, because "the defendants in [the 2012 Kelly Action] have no way of knowing about the 'first to file' defense unless and until the complaints . . . are unsealed").[12]

The similarities between the three complaints are evident from the examples below:

| Sales and Marketing Practices | 2006 Garcia Compl. | 2010 Fauci Compl. | 2012 Kelly Compl. |
|---|---|---|---|
| **Summary of Allegations** | "The Defendants in this case . . . engage[d] in numerous unlawful activities in their co-marketing of the drug Xolair® . . . ."  *Id.* at 2. | "[M]any Xolair sales representatives were involved in illegal and wrongful [sales and marketing] practices."  *Id.* ¶ 110. | Defendants "aggressively and illegally market[ed] Xolair. . . ."  *Id.* ¶ 12. |
| **Inducing Prescriptions for Off-label Uses** | "The defendants deliberately detailed physicians on 'off-label' uses of Xolair, often orally and sometimes in the form of unpublished abstracts (often financed by the companies themselves), and encouraged their sales forces to get this information before doctors, in order to increase sales."  *Id.* ¶ 30. | "Defendants instructed their sales representatives to promote illegal uses of Xolair to their prescribing physician customers by marketing Xolair for treatment of all types of asthma, not just moderate to severe asthma, as the approved indication stated."  *Id.* ¶ 111. | "The sales practices that Defendants' management directed sales representatives to utilize . . . illegally promoted the 'off-label' use of Xolair."  *Id.* ¶ 218.  "Defendants never directed the Xolair sales force to draw any distinction between 'mild' or 'active' asthma and 'moderate to severe asthma'."  *Id.* ¶ 205.  Distribution of medical literature promoting off-label uses of Xolair, including unapproved clinical studies, and unpublished abstracts.  *Id.* ¶¶ 201, 228, 230-31. |

---

[12] With respect to the first-to-file rule's requirement that the previous action be "pending" at the time of the subsequent filing, the 2006 Garcia Action was clearly "pending" when Fauci and Kelly filed their related actions, and the 2010 Fauci Action was "pending" when Kelly filed her action.

| Sales and Marketing Practices | 2006 Garcia Compl. | 2010 Fauci Compl. | 2012 Kelly Compl. |
|---|---|---|---|
| **Improper Involvement with SMN Forms** | "[M]any Novartis and Genentech representatives throughout the country fill out the SMNs themselves . . . . In the process, information is often manipulated on the SMN forms." *Id.* ¶ 33. | "Genentech and Novartis further instructed their sales representatives to fill out the SMNs for physicians and, when so doing, to place false information therein, such as increased body weight to increase the dosage, and thereby increase the sales, of Xolair." *Id.* ¶ 121. | "Many Novartis and Genentech representatives throughout the country fill out the SMNs themselves . . . ." *Id.* ¶ 273. |
| **Improper Payments/ Kickbacks** | Among the kickbacks offered to providers were: "[s]peaker honoraria in the range of $1500-$3000," "expensive gifts," "'preceptorships' that are little more than cash incentives," and [d]elayed/post-dated billing by pharmacy distributors. *Id.* ¶ 38 | | "Defendants have provided a variety of expensive equipment to HCPs to induce them to administer Xolair," including refrigerators, as well as "honoraria of $1,000.00 to $3,000.00." *Id.* ¶ 18. "$500.00 to $1,000.00 payments to physicians for 'preceptorships' (allowing sales representatives and/or managers to tag along when asthma patients were being seen by physicians) . . . ." *Id.* ¶ 257. |
| **Improper Billing Practices** | "Sales representatives routinely also discuss billing and coding and disseminate information on the same, all in an effort to ensure that the patient claim will be reimbursed regardless of whether the patient is eligible or the drug is covered for that patient." *Id.* ¶ 36. | | "[A]dvising HCPs to bill for patient levels 4-5 when patient levels 1-2 were proper" and "to use improper CPT codes, especially CPT code 96401, to seek Government Healthcare Program reimbursement for the administration of Xolair." *Id.* ¶¶ 281, 285. |

| Sales and Marketing Practices | 2006 Garcia Compl. | 2010 Fauci Compl. | 2012 Kelly Compl. |
|---|---|---|---|
| | | | "Defendants' sales representatives were also directed by Defendants' management to 'market the spread' in general to HCPs . . . ." *Id.* ¶ 297. |

**A.    The 2010 Fauci Action alleges the same essential facts and elements of fraud as the pending 2006 Garcia Action.**

The 2010 Fauci Action alleges that Defendants engaged in the same unlawful sales and marketing practices regarding Xolair® as the first-filed 2006 Garcia Action.  *Compare, e.g.*, 2010 Fauci Compl.  ¶¶ 111, 121 ("Defendants instructed their sales representatives to promote illegal uses of Xolair[,]" and "instructed their sales representatives to fill out the SMNs for physicians and, when so doing, to place false information therein . . . [to] increase the sales") *to* 2006 Garcia Compl. ¶¶ 30, 33 ("defendants deliberately detailed physicians on 'off-label' uses of Xolair" and had "the sales representatives fill out the SMN forms, often with inaccurate and misleading information . . ."); *see also* Appendix 1 (describing in detail the similarities among the various complaints).[13]

The 2006 Garcia Action—filed over four years before Fauci filed his *qui tam* suit—was more than sufficient to give the government "enough material information . . . to launch its investigation" into Defendants' allegedly fraudulent practices.  *See Heineman-Guta*, 718 F.3d at 35.  And the government investigated the allegations before it declined to intervene.  The 2010

---

[13] If anything, the 2010 Fauci Action alleges less than the 2006 Garcia Action.  For example, in his *qui tam* action, Fauci does not allege that Defendants made improper payments or kickbacks to induce physicians to prescribe Xolair®, as Garcia alleged in 2006.  *See* 2006 Garcia Compl. ¶ 25.  Fauci did, however, allege such improper payments in his 2006 wrongful termination action.  *See* 2006 Fauci Employment Action, ECF No 1 ¶ 47.

Fauci Action is thus exactly the type of duplicative suit mimicking allegations already available to the government that the first-to-file bar was designed to prevent.  *See Wilson*, 2014 WL 1688934, at *4, *6.

> **B.**    **The 2012 Kelly Action alleges the same essential facts and elements of fraud as the pending 2006 Garcia Action and the pending 2010 Fauci Action.**

Kelly states in her 2012 complaint that she "previously initiated *this* lawsuit in 2006."  *See* 2012 Kelly Compl. ¶ 22 (emphasis added).  By her own admission, the 2012 Kelly Action contains the same allegations as the 2006 Garcia Action, which Kelly originally filed with Garcia in 2006.

Both cases allege the same essential facts.  *Compare, e.g.*, 2006 Garcia Compl. at 2 (alleging that "Defendants' unlawful activities include . . . 'off-label' marketing of Xolair for unapproved indications; . . . causing physicians and others to falsely represent facts on Statement of Medical Necessity forms ('SMNs') for Xolair; . . . paying kickbacks to physicians and others; . . . [and] improperly targeting disproportionate share hospitals") *to* 2012 Kelly Compl. ¶ 1 (asserting that Defendants engaged in "off-label marketing/misbranding [of]. . . Xolair® . . . for unapproved indications," provided "kickbacks to HCPs," "falsely represent[ed] facts on Statement of Medical Necessity forms ('SMNs')," [and] "improperly target[ed] disproportionate share hospitals" . . . [by] 'marketing of the spread.'"); *see also* Appendix 1 (detailed comparison).

The 2012 Kelly Action is also duplicative of the 2010 Fauci Action.  *Compare, e.g.*, 2010 Fauci Compl. ¶¶ 111, 121 ("Defendants instructed their sales representatives to promote illegal uses of Xolair" and to "fill out the SMNs for physicians and, when so doing, to place false information therein . . . [to] increase the sales . . . .") *to* 2012 Kelly Compl. ¶¶ 218, 215 ("Defendants' management directed sales representatives to . . . illegally promote[] the 'off-

16

label' use of Xolair" and "to fill out the SMNs for physicians, and, when so doing, to place false information therein . . . [to] increase the sales . . . ."); *see also* Appendix 1.

These two prior actions were undoubtedly sufficient to give the government notice to investigate the allegedly fraudulent practices that Kelly alleged in 2012.  *See Heineman-Guta*, 718 F.3d at 36-37.  In fact, Kelly concedes that the United States had already completed its investigation and declined to intervene in the 2006 Garcia Action *before* she filed her 2012 Complaint.  2012 Kelly Compl. ¶ 22; *see also* 2006 Garcia Action, ECF No. 38.  It is difficult to imagine a clearer example of a "duplicative claim[] [that does] not help reduce fraud or return funds to the federal fisc."  *United States ex rel. LaCorte v. SmithKline Beechem Clinical Labs.*, 149 F.3d 227, 234 (3d Cir. 1998).

*   *   *   *   *

For these reasons, the Court should dismiss with prejudice the 2010 Fauci Action and the 2012 Kelly Action because they are barred by the first-to-file rule.

## II.   The Court lacks jurisdiction over all three actions under the public disclosure bar.

The Court should also dismiss all three actions under the FCA's public disclosure bar, which prohibits *qui tam* suits that are "based upon the public disclosure of allegations or transactions in a . . . civil . . . hearing . . . unless . . . the person bringing the action is an original source of the information."  31 U.S.C. § 3730(e)(4)(A) (2006).[14]  This rule is designed to prevent

---

[14] The public disclosure bar was amended as part of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901, effective March 23, 2010.  That amendment is clearly not applicable to the 2006 Garcia Action, which addresses conduct that occurred well before the amendment became effective.  Nor is it applicable to the 2010 Fauci Action or the 2012 Kelly Action because it is not retroactive and does not apply to pre-2010 conduct, even where the complaint was filed after the effective date.  *See United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 915-16 (4th Cir. 2013) ("The retroactivity inquiry looks to when the underlying conduct occurred, not when the complaint was filed."); *see also Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946-47 (1997) (presumption (continued…)

"opportunistic plaintiffs from bringing parasitic qui tam actions." *United States ex rel. Poteet v. Bahler Med., Inc.*, 619 F.3d 104, 107 (1st Cir. 2010).

Relators—not Defendants—bear the burden to prove that they can overcome the public disclosure bar, and must do so by a preponderance of the evidence. *United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 54 (1st Cir. 2009). Relators cannot carry that burden here because publicly filed lawsuits disclosed their allegations before they filed their complaints, and none of the Relators is an "original source" of those allegations.

**A.    The Relators' allegations are substantially similar to the ones that were publicly disclosed in the prior wrongful termination actions.**

Courts in the First Circuit employ a "multi-part inquiry" to determine if the public disclosure bar applies: "(1) whether there has been a prior, public disclosure of fraud; (2) whether that prior disclosure of fraud emanated from a source specified in the statute's public disclosure provision; and (3) whether the relator's qui tam action is 'based upon' that prior disclosure of fraud." *Poteet*, 619 F.3d at 109. If each question is answered in the affirmative, the complaint must be dismissed unless the relator qualifies as an "original source." *Id.* at 109-10. Each prong of the public disclosure bar is satisfied here.

***First***, the 2004 Rediehs Action and 2006 Fauci Employment Action are "prior, public disclosure[s] of fraud." *See id.* at 109. Public disclosure occurs "when the essential elements exposing the particular transaction as fraudulent find their way into the public domain." *Ondis*,

---

against retroactivity applies even where complaint was filed after FCA amendments took effect). *But see United States ex rel. Booker v. Pfizer, Inc.*, No. 10-cv-11166, 2014 WL 1271766, at *5 n.3 (D. Mass. Mar. 26, 2014) (agreeing that the amendment is not retroactive, but then applying it retroactively). Pre-2010 conduct that allegedly continued after the 2010 amendments should also be examined under the prior version of the statute because the amendments cannot "put the proverbial genie back in the bottle and thereby pretend a fact that was 'publicly disclosed' suddenly was not publicly disclosed any longer." *United States ex rel. Paulos v. Stryker Corp.*, No. 11-cv-0041, 2013 WL 2666346, at *6 n.8 (W.D. Mo. June 12, 2013).

587 F.3d at 54. Such disclosure need only be "sufficient to put the government on notice of the

*likelihood* of related fraudulent activity." *United States ex rel. Poteet v. Lenke*, 604 F. Supp. 2d

313, 319 (D. Mass. 2009) (emphasis added) (quoting *United States ex rel. Poteet v. Medtronic,*

*Inc.*, 552 F.3d 503, 512 (6th Cir. 2008)), *aff'd*, 619 F.3d 104.[15]

    Rediehs and Fauci described the same supposedly unlawful practices that the Relators

later alleged in their *qui tam* complaints, including the following:

- Inducing physicians to prescribe Xolair® for unapproved uses, including, for example, by illegally completing and influencing SMN forms, *see, e.g.,* 2004 Rediehs Compl. ¶¶ 17-20; 2006 Fauci Employment Compl. ¶ 19;

- Providing improper payments, or "kickbacks," to physicians, *see, e.g.,* 2004 Rediehs Compl. ¶¶ 24-26; 2006 Fauci Employment Compl. ¶ 47;

- Manipulating coding and billing to obtain higher reimbursement rates, *see, e.g.,* 2004 Rediehs Compl. ¶¶ 14 and 21-23; 2006 Fauci Employment Compl. ¶ 21;

- Encouraging Disproportionate Share Hospitals to bill Medicare at inflated rates for Xolair®, *see, e.g.,* 2004 Rediehs Compl. ¶ 16; and

- "Marketing the spread," *see, e.g.,* May 22, 2006 Fauci Employment Compl. ¶¶ 18-22.

These allegations, if assumed to be true, were plainly sufficient to notify the government of the

likelihood that Defendants' sales and marketing practices may have violated the FCA.

    *Second*, the pleadings in the 2004 Rediehs Action and 2006 Fauci Employment Action

---

[15] For purposes of the public disclosure bar, these prior suits against Genentech—which relate to the promotion of Xolair—also apply to NPC. Prior public disclosures need not explicitly reference an entity to bar a later suit against that entity. *See, e.g.*, *United States ex rel. Black v. Health & Hosp. Corp. of Marion Cnty.*, No. 11-1726, 2012 WL 3538820, at *7-8 (4th Cir. Aug. 17, 2012) (holding that prior public disclosures, which did not explicitly reference defendant, nonetheless barred suit against that defendant because the disclosures had alleged that the same type of fraud was taking place in Indiana, where defendant was located); *United States. ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc.*, 436 F.3d 726, 727-29 (7th Cir. 2006) (finding that relator's *qui tam* was barred by prior disclosures that did not explicitly reference defendant because defendant was "directly identifiable from the public disclosures"). Here, because NPC and Genentech co-promote Xolair, NPC is directly identifiable from the prior suits against Genentech for purposes of the public disclosure bar.

are qualifying public disclosures under the FCA because they were filed in the context of a "civil . . . hearing." 31 U.S.C. § 3730(e)(4)(A); *see also Poteet*, 619 F.3d at 111 ("[A] civil complaint filed in court qualifies as a public disclosure.  The cases are in agreement.").

*Third*, the Relators' allegations are "based upon" the public disclosures in the 2004 Rediehs Action and the 2006 Fauci Employment Action because they are "substantially similar" to the allegations made in those prior lawsuits.  As the First Circuit has held, "as long as the relator's allegations are substantially similar to information disclosed publicly, the relator's claim is 'based upon' the public disclosure even if he actually obtained his information from a different source." *Ondis*, 587 F.3d at 57.  This prong is satisfied "[e]ven if it is clear from the record that the allegations . . . did not derive from the public disclosures but from information gained from the relators' own experiences," *United States ex rel. Nowak v. Medtronic*, 806 F. Supp. 2d 310, 331 (D. Mass. 2011), and regardless of whether the allegations are identical.  *See Poteet*, 619 F.3d at 115 (precluding jurisdiction over action because, while "details [in the relator's complaint] undoubtedly add some color to the allegation, the allegation ultimately targets the same fraudulent scheme"); *see also United States ex rel. Bartz v. Ortho-McNeil Pharm., Inc.*, 856 F. Supp. 2d 253, 265 (D. Mass. 2012) ("[T]he public disclosure bar's focus is on notice and not detail.").

The Relators' allegations are substantially similar—and in many cases identical—to the allegations in Rediehs' and Fauci's wrongful termination suits.  The Relators allege that Defendants carried out their supposedly unlawful scheme in the same ways that Rediehs and Fauci had publicly disclosed.  Appendix 1 to this brief describes in detail the allegations in each complaint and demonstrates how they overlap, and the table below provides a snapshot of the nearly complete overlap among the various complaints.

20

|  | 2004 Rediehs Action | 2006 Fauci Employment Action | 2006 Garcia Action | 2010 Fauci Action | 2012 Kelly Action |
|---|---|---|---|---|---|
| **Inducing Prescriptions for Unapproved Uses** | ¶¶ 15, 17-18 | ¶¶ 19, 38 | ¶¶ 30-35 | ¶¶ 111-121 | ¶¶ 230-31, 273-76 |
| **Improper Payments/ Kickbacks** | ¶¶ 24-26 | ¶ 47 | ¶¶ 25, 38 | N/A | ¶¶ 18, 255-57 |
| **Improper Billing Practices** | ¶¶ 14, 16, 19, 22 | ¶¶ 18, 21 | ¶¶ 33, 36, 40 | N/A | ¶¶ 276, 281, 285, 290, 297 |

These extensive public disclosures demonstrate that the Relators' *qui tam* actions "ultimately target[ ] the same fraudulent scheme"—the allegedly fraudulent sales and marketing of Xolair®—as the earlier-filed wrongful termination actions. *See Poteet*, 619 F.3d at 115. Because Relators' allegations are "substantially similar" to those in the 2004 Rediehs Action and the 2006 Fauci Employment Action, *see Ondis*, 587 F.3d at 58, this Court lacks jurisdiction over the Relators' cases unless each Relator can show that he or she is an original source of the information.

**B.      None of the Relators qualifies as an original source.**

The public disclosure bar's "original source" exception applies only when a relator has "direct and independent knowledge of the information supporting her claims." *See United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.* ("*Duxbury II*"), 719 F.3d 31, 34 (1st Cir. 2013) (citing 31 U.S.C. § 3730(e)(4)(B) (2006)).  Knowledge is "direct" if it is "marked by absence of an intervening agency, instrumentality, or influence: immediate." *Ondis*, 587 F.3d at 59. Knowledge is *not* direct if it is gathered or derived from third parties, including a relator's

colleagues or industry professionals. *See United States ex rel. Estate of Cunningham v. Millennium Labs. of Cal., Inc.*, 713 F.3d 662, 673 (1st Cir. 2013) (concluding that information gleaned from the relator's own company's sales force was not sufficiently "direct"). "The relator as the proponent of federal jurisdiction bears the burden of proving its existence by a preponderance of the evidence." *Id.*

The First Circuit has held relators to a strict standard in demonstrating that they are original sources of publicly disclosed information. For example, in *Estate of Cunningham*, a relator employed by the defendant's competitor brought an FCA action based on information gleaned from, *inter alia*, the defendant's sales force and other industry personnel. *Id.* at 669, 673-74. The district court held, and the First Circuit affirmed, that because the relator learned the information secondhand, he could not show that his knowledge was "direct and independent." *Id.* at 674. Even though the relator had reviewed certain of the defendant's marketing materials, emails, and laboratory testing forms, his knowledge was still indirect. *Id.* at 669; *see also Nowak*, 806 F. Supp. 2d at 333-34 (relator was not an original source for allegations that originated with another relator).

In addition, even if a relator has direct and independent knowledge of the information on which his or her allegations are based, the relator does not qualify as an "original source" unless he or she also "voluntarily provided the information to the Government before filing [a *qui tam* action] which is based on the information." 31 U.S.C. § 3730(e)(4)(B).

As explained below, none of the Relators here qualifies as an original source.

> **1.    Garcia does not qualify as an original source because he has not demonstrated direct and independent knowledge of the information on which his fraud allegations are based.**

Garcia does not qualify as an original source because he has not pled that he learned

information about the alleged fraud directly and independently, as required to meet the original

source exception of the public disclosure bar.  To establish "direct and independent knowledge,"

relators must do more than merely assert conclusorily that they were corporate insiders with

access to information; rather, they must affirmatively plead direct and independent knowledge of

the purported fraudulent activity.  *See Bartz*, 856 F. Supp. 2d at 266-67 (relator could not avail

himself of original source exception because he failed to allege facts that demonstrate first-hand

knowledge).  Moreover, a relator's first-hand knowledge must pertain specifically to the

"operative elements of his claims," *id.* at 267, not conduct that is supposedly unlawful in some

other way, *see United States ex rel. Schumann v. AstraZeneca PLC*, No. 03-5423, 2010 WL

4025904, at *7 (E.D. Pa. Oct. 13, 2010) (finding that a relator could not claim original source

status based on mere presence at meetings "with no mention of how he obtained direct

knowledge of the ultimate fraudulent conduct"), *reconsideration denied by* 2012 WL 1071133

(E.D. Pa. Mar. 30, 2012).

Garcia's complaint does not allege that he directly and independently learned of any

supposedly false or fraudulent conduct—*i.e.*, the "operative elements" of an FCA claim.  Most of

his complaint consists of background information, such as descriptions of the parties and the

regulatory background of Xolair®.  *See, e.g.*, 2006 Garcia Compl. ¶¶ 7-21, 27-29.  But when it

comes to information regarding any alleged fraud, the complaint is bare and speaks only in

second-hand generalities.  For example, Garcia alleges that he attended sales meetings where

management discussed unapproved uses of Xolair® and the targeting of Disproportionate Share

Hospitals.  *See, e.g.*, *id.* ¶¶ 25, 31, 40-41.  But he does not allege that he ever promoted Xolair®

for an off-label use, or witnessed first-hand any off-label promotion by a Genentech or NPC

employee.  *See, e.g.*, *id.* ¶ 30 (alleging that "[t]he defendants deliberately detailed physicians on

23

'off-label' uses of Xolair, often orally and sometimes in the form of unpublished abstracts," without any indication of first-hand knowledge of these allegations). Nor does he allege that he, or someone in his presence, ever improperly promoted Xolair® to a Disproportionate Share Hospital, made improper payments to doctors, or included incorrect information on an SMN form.[16] Instead, for the information supporting the "operative elements" of his complaint—the alleged fraud—Garcia resorts to blanket allegations with no facts that demonstrate direct and independent knowledge.

Because Garcia has not demonstrated direct and independent knowledge of information upon which his allegations of fraudulent activity are based, he cannot qualify for the original source exception, and the Court lacks jurisdiction over his action. *Estate of Cunningham*, 713 F.3d at 674; *see also Bartz*, 856 F. Supp. 2d at 266-67 (finding original source exception inapplicable where relator made "no showing even suggesting any first-hand knowledge" and failed to provide "any evidence that [he] was in fact an original source").[17]

---

[16] The absence of such allegations is critical because if Garcia learned from anyone else the information upon which his allegations of fraud are based, he cannot qualify as an original source. *See Estate of Cunningham*, 713 F.3d at 669; *Nowak*, 806 F. Supp. 2d at 333-34 (relator was not an original source of allegations because "the detailed first-hand description of that scheme originated with [another person]"); *see also United States ex rel. Schumann v. AstraZeneca Pharm. LP*, No. 03-5423, 2013 WL 300745, at *8 (E.D. Pa. Jan. 25, 2013) ("It is not enough . . . that the relator learn the information via his employment, but he must do so without deriving that information from others."); *United States ex rel. Schubert v. All Children's Health Sys., Inc*., 941 F. Supp. 2d 1332, 1336 (M.D. Fla. 2013) (relator who was Vice President at defendant could not be an original source because she failed to explain how she obtained various documents quoted in complaint).

[17] Garcia also fails to qualify for the original source exception because he did not allege that he satisfied the statutory requirement to provide information about alleged fraud to the Government "before" he filed a *qui tam* suit based on that information. *See* 31 U.S.C. § 3730(e)(4)(B). Rather, Garcia stated that he was *providing* information to the Government—not that he had done so. *See* 2006 Garcia Compl. ¶¶ 4, 45. "The word 'before' is important," *Bartz* 856 F. Supp. 2d at 266, since the public disclosure bar does not permit Garcia to rely on information he provided to the Government after he filed his complaint. For this independent reason, Garcia does not qualify as an original source.

**2.      Fauci does not qualify as an original source because he has not demonstrated direct and independent knowledge of the information on which his fraud allegations are based.**

Fauci, too, has failed to plead direct and independent knowledge of any information on which his allegations of fraud are based.  In fact, Fauci expressly pleads the opposite—that his knowledge is *second-hand*.  He alleges that he learned of the allegedly illegal off-label promotion of Xolair® from "sales reps" who "discussed their sales practices" with Fauci at various meetings.  *See* 2010 Fauci Compl. ¶ 116.  Just like the relator in *Nowak*, Fauci lacks direct and independent knowledge of information supporting any allegations of fraud because "the detailed first-hand description of that scheme originated with [another person.]"  *Nowak*, 806 F. Supp. 2d at 333-34; *see also Schumann*, 2013 WL 300745, at *8 ("It is not enough . . . that the relator learn the information via his employment, but he must do so without deriving that information from others.")

The same is true for Fauci's allegations regarding SMN forms.  He alleges that Genentech and NPC instructed employees to include incorrect information on SMNs and that these practices "were utilized by sales representatives," but he does not allege that he "utilized" this practice or that he witnessed first-hand anyone at either company doing so.  *See* 2010 Fauci Compl. ¶¶ 121, 124.  In short, he fails to allege direct and independent knowledge of any information regarding falsification of SMN forms.

Because Fauci has not demonstrated direct and independent knowledge of the information underlying his claims of purported fraud, he does not qualify for the original source exception, and the Court lacks jurisdiction over his *qui tam* action.

**3.      Kelly does not qualify as an original source because she has not demonstrated direct and independent knowledge of the information on which her fraud allegations are based.**

Like Garcia and Fauci, Kelly also does not qualify for the original source exception.

25

Kelly's lengthy complaint makes general allegations that conceal the basis of her knowledge—for example, asserting broadly that "sales representatives" or "Defendants" engaged in unlawful activities without pleading any first-hand and independent knowledge regarding those unlawful activities. Kelly claims Defendants' sales force "followed a national sales policy and procedure to promote Xolair off-label," 2012 Kelly Compl. ¶ 229, "fill[ed] out the SMNs themselves," *id.* ¶ 273, and "assiduously and specifically instructed HCPs . . . to use improper CPT codes," *id.* ¶ 285. But Kelly does not assert that she promoted Xolair® off-label, filled out SMN forms, or encouraged a physician to improperly bill for the drug, or that she witnessed first-hand any employee of Defendants do so. Kelly makes bare and conclusory assertions that she provided kickbacks to physicians, *see*, *e.g.*, *id.* ¶ 257, but she fails to identify even those physicians to whom she allegedly provided inducements, let alone first-hand and independent knowledge of fraudulent activity that would support her FCA claims.[18]

Thus, like the other two relators here, Kelly does not qualify as an original source, and the Court should dismiss all three actions because they are barred by the public disclosure bar.[19]

---

[18] Kelly, like Garcia, is also not an original source because she has not alleged that she provided factual information to the government prior to filing her original *qui tam* action. *See* note 17, *supra*.

[19] Assuming, *arguendo*, that the Court were to find that the Relators were original sources or otherwise deny this Motion, the Court should still hold that Relators could be original sources *only* as to claims regarding activity during their respective tenures at Genentech or NPC—*i.e.*, for Garcia until May 2004, *see* 2006 Garcia Compl. ¶ 23; for Fauci until April 2005, *see* 2010 Fauci Comp. ¶ 37; and for Kelly until "late 2006," *see* 2012 Kelly Compl. 52—because, absent some other basis to assert first-hand knowledge, a relator cannot be an original source of events that occurred after he or she left a defendant's employ. *See, e.g.*, *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 475-76 (2007); *Duxbury II*, 719 F.3d at 36 (affirming the district court's narrowing of the case to the time period during which relator was employed by defendant). With respect to Kelly in particular, the combination of the six-year statute of limitations period applicable to FCA cases, *see* 31 U.S.C. § 3731(b)(1), and the original source exception to the public disclosure bar dictates that her case be limited to a seven month period between June 8, 2006 (six years before Kelly filed her *qui tam* ) and "late 2006" (when she alleges she left NPC).

**III.   The Court should dismiss all three complaints because Relators failed to plead fraud with particularity in accordance with Rule 9(b).**

Even assuming the three actions here could survive their jurisdictional infirmities, which they cannot, the Court should dismiss them because they fail to comply with Fed. R. Civ. P. 9(b). Because "[n]ot all fraudulent conduct gives rise to liability under the FCA," *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 225 (1st Cir. 2004), *abrogated in part on other grounds by Allison Engine v. United States ex rel. Sanders*, 553 U.S. 662 (2008), a relator bringing a *qui tam* action "must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), and "specify 'the time, place, and content of an alleged false representation.'"[20] *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720 (1st Cir. 2007) (quoting *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996)), *abrogated in part on other grounds by Allison Engine*, 553 U.S. 662.  To survive a motion to dismiss, *qui tam* relators must allege "particular details of a scheme to submit false claims paired with 'reliable indicia' that lead to a strong inference that false claims were actually submitted."  *United States ex rel. Worsfold v. Pfizer Inc.*, No. 09-11522, 2013 WL 6195790, at *6 (D. Mass. Nov. 22, 2013) (quoting *Duxbury*, 579 F.3d at 29); *see also Karvelas*, 360 F.3d at 225 ("Evidence of an actual false claim is the sine qua non of a False Claims Act violation.").

As to the **scheme**, Rule 9(b) requires, "at a minimum," that the complaints set forth "the who, what, where, when, and how of the alleged fraud."  *Worsfold*, 2013 WL 6195790, at *5.

---

[20] Allegations that a defendant violated other federal laws or regulations are insufficient to plead an FCA claim.  *See United States ex rel. Rost v. Pfizer*, 507 F.3d 720, 727 (1st Cir. 2007).  As such, any attempts by Relators to allege that Defendants' conduct constituted violations of the Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 ("HIPAA"), *see* 2006 Garcia Compl. ¶ 33; 2012 Kelly Compl. ¶¶ 19, 269, the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b ("AKS"), *see* 2006 Garcia Compl. ¶ 38; 2012 Kelly Compl. ¶¶ 118-21, 268, or the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, *see*, *e.g.*, 2010 Fauci Compl. ¶¶ 117, 128, 130; 2012 Kelly Compl. ¶¶ 13, 15-16, 208, 224, should be disregarded because they fail to establish an FCA violation.

"Conclusory accusations related to 'plans and schemes' are insufficient." *Id.*  In *Worsfold*, Judge

Gorton found that despite relator's general allegations that the defendant pharmaceutical

manufacturer promoted drugs off-label, the complaint failed under Rule 9(b) because it did not

identify physicians who received off-label messaging, physicians who prescribed drugs off-label

after receiving off-label messaging or any pharmacies or hospitals who filled those off-label

prescriptions or the dates, times, contents or amounts of any false claims submitted to the

government.  *Id.* at *7; *see also United States ex rel. Keeler v. Eisai, Inc.*, No. 13-10973, 2014

WL 2595592, at *10 (11th Cir. June 11, 2014) (affirming dismissal of *qui tam* complaint where

"Relator specified receiving training and marketing materials advocating off-label use, [but] he

has failed to properly demonstrate [defendant's] act of promotion" and has not alleged, *inter alia*,

who instructed him to promote drugs for off-label uses, which physicians received such off-label

promotion and were induced to write prescriptions, and the messaging provided such

physicians); *Karvelas*, 360 F.3d at 233 (affirming dismissal of *qui tam* complaint that failed to

specify the dates or content of any false claims submitted for government reimbursement,

provided no identification numbers or amounts charged in individual claims for specific tests,

supplies, or services, and did not identify or describe individuals involved in the improper

billing).

    All three complaints here suffer from similar deficiencies.  Although replete with

sweeping and conclusory allegations regarding off-label, kickback, and other purported

"schemes," none of the complaints specifies the basic "who, what, where, when, and how" that

Rule 9(b) requires.[21]  *Worsfold*, 2013 WL 6195790, at *5.  For example, Garcia alleges that

---

[21] Relators also have failed to show that any claims submitted to state Medicaid agencies for the
reimbursement of allegedly off-label prescriptions for Xolair® were false.  The Medicaid statute
provides states the discretion to reimburse prescriptions written for off-label, non-compendium
(continued…)

Genentech "routine[ly]" sent sales representatives promotional literature on Xolair's®

unapproved uses, *see* 2006 Garcia Compl. ¶ 31, but nowhere does he state who at Genentech

provided this literature, that he or anyone else then gave this literature to physicians, the identity

of any physicians who prescribed the drug for off-label uses as a result of receiving this

literature, or whether any of those off-label prescriptions were for patients covered by

Government healthcare programs.[22]  Fauci likewise claims generally that "Defendants"

instructed sales representatives to convey purportedly off-label messages to physicians, *see* 2010

Fauci Compl. ¶¶ 112-114, but he does not identify a single such conversation that ever took

place, let alone when it took place, who was involved or what was said.

　　Despite its length, Relator Kelly's complaint fares no better under Rule 9(b).  Her

pleading devotes almost 100 pages to a recitation of the 123 counts, 14 pages to allegedly off-

label studies that Defendants purportedly encouraged their sales forces to share with physicians,

*see id.*¶¶ 235-42, and over 60 paragraphs to a summary of the law and the regulatory history of

Xolair®, *see id.* ¶¶ 102-40, 165-90.  The remaining pages abound with generalities but not

concrete details the First Circuit requires to satisfy Rule 9(b).  For example, the complaint spends

more than eleven pages summarizing various publicly available off-label reprints regarding

---

uses.  *See United States ex rel. Banigan v. Organon USA Inc.*, 883 F. Supp. 2d 277, 294 (D.
Mass. 2012).  To survive a motion to dismiss, a relator must allege that a particular "state denies
Medicaid coverage for an off-label prescription not included in a medical compendium."  *Id.* at
295.  Because Relators have failed to plead that any alleged off-label prescription was not
reimbursable by Medicaid, they have failed to show the falsity of any claims submitted for
payment of off-label Xolair® prescriptions.  Garcia even concedes that "Medicaid will reimburse
the prescription of certain . . . drugs for an 'off label use.'"  2006 Garcia Compl. ¶ 13.

[22] Garcia's allegations that "kickback activity is widespread on a national basis and is
encouraged by management," 2006 Garcia Compl. ¶ 38, and that sales representatives completed
SMNs, *id.* ¶ 33, are likewise insufficient, as he does not identify a single sales representative who
engaged in such activity, a single physician who benefitted from such conduct, or a single
prescription written and submitted for reimbursement as a result of such conduct.

Xolair® without any specific allegation that copies of these articles were provided by anyone at NPC or Genentech to a physician—let alone that any such physician then prescribed Xolair® to a patient covered by a Government healthcare program. 2012 Kelly Compl. ¶ 240, at pp. 61-72 (prefaced by a broad statement that "[t]he following publications are included among the off-label studies that Defendants' sales representatives have been instructed and encouraged to share with and/or disseminate to HCPs").[23]

As to *the existence of actual false claims*, where, as here, relators have failed to allege the specifics of any actual false claim submitted as a result of the alleged "scheme," they can satisfy Rule 9(b) only by providing "reliable indicia" that lead to a "strong inference" that false claims were actually submitted. *Duxbury I*, 579 F.3d at 29. "[F]actual or statistical evidence" may satisfy Rule 9(b), but only if they "strengthen the inference of fraud *beyond possibility*." *Rost*, 507 F.3d at 733 (emphasis added).

In *Rost*, the First Circuit affirmed dismissal on Rule 9(b) grounds where relator's allegations did not sufficiently connect the alleged underlying fraud to the submission of false claims. His allegations—that defendants "induced and seduced" doctors into prescribing Genotropin for off-label uses to their patients, including federally insured patients, and that "more than half" of all adult and a quarter of all pediatric sales of Genotropin were for off-label uses—left open the possibility that "doctors who prescribed Genotropin for off-label uses as a result of [defendant's] illegal marketing of the drug withstood the temptation and did not seek federal reimbursement," or that "physicians prescribed Genotropin for off-label uses only where the patients paid for it themselves or when the patients' private insurers paid for it." *Id.*

---

[23] Kelly also fails to connect Defendants' allegedly off-label promotion of Xolair®, *see* 2012 Kelly Compl. ¶¶ 13, 245, purported provision of inducements, *id.* ¶ 257, or completion of SMNs, *id.* ¶¶ 273, 277-78, with the submission of even a single reimbursement claim.

In *Duxbury I*, the First Circuit held that the relator's complaint alleging kickbacks satisfied Rule 9(b), *but only* because relator had identified by name and location eight healthcare providers who received kickbacks from defendant resulting in the submission of false claims and supplied "information as to the dates and amounts of the false claims filed by these providers with the Medicare program." 579 F.3d at 29-30.[24]   The First Circuit found that the relator's complaint presented a "close call" under Rule 9(b).  *Id.* at 30; *see also id.* at 32 (limiting holding to the facts and "declin[ing] to draft a litigation manual full of scenarios of what allegations would be sufficient for purposes of Rule 9(b)" (internal quotations omitted)).

The Garcia, Fauci, and Kelly complaints are similar to the complaint that failed in *Rost*, and they contain far less detail than the complaint that the First Circuit found to be a "close call" in *Duxbury*.  Taken together, the complaints here

- fail to identify a single employee of any Defendant who (i) promoted Xolair® off-label, (ii) participated in the falsification or manipulation of SMN forms, (iii) recommended improper billing processes to physicians, or (iv) improperly targeted Disproportionate Share Hospitals;

- fail to identify a single physician to whom Xolair® was promoted off-label by any employee of any Defendant;

- fail to identify a single Xolair® prescription allegedly (i) written for an off-label use, (ii) resulting from an improper inducement, (iii) resulting from a Defendant sales representative's involvement in the SMN process, or (iv) stemming from allegedly improper billing practices, including the improper targeting of Disproportionate Share Hospitals;

- fail to identify a single physician who wrote a false prescription (as defined by the preceding bullet) to be reimbursed by a government healthcare program;

- fail to identify a single government-insured patient who was the recipient of any false prescription (as defined by the preceding bullet);

---

[24] The court later stated that the particular factual allegations regarding the eight healthcare providers "were the only allegations that distinguished Duxbury's claims from the ones that [the First Circuit] found to be deficient under Rule 9(b) in *Rost*."  *Duxbury II*, 719 F.3d at 38.

- fail to identify a single provider who actually submitted a false prescription (as defined by the preceding bullet) to a government healthcare program for reimbursement;

- fail to identify the amount or date of any allegedly false claim for reimbursement;[25]

- fail to identify a single SMN to which a Defendant sales representative contributed false or fraudulent information; and

- fail to identify a single government-insured clinic or hospital that was improperly targeted by Defendants.

As in *Rost*, the complaints here fail to provide reliable indicia that the alleged underlying schemes resulted in the submission of false claims, even though Relators have had ample time to recognize and resolve these deficiencies.[26] Relators have filed multiple complaints, dating as far back as eight years, and cycled through numerous counsel, and yet still have failed to plead allegations with the particularity required by the First Circuit. Indeed, the Relators here have not even come close to pleading the kind of particularity the First Circuit found barely sufficient in *Duxbury I*. Despite pleading several iterations of their allegations, Relators have, at best, merely raised a *possibility* that false claims might have been submitted, which is simply not enough to satisfy Rule 9(b). *See, e.g.*, *Rost*, 507 F.3d at 733; *Worsfold*, 2013 WL 6195790, at *7-8.

Accordingly, the Court should dismiss all three actions on the alternative ground that they fail to plead the alleged fraud with particularity under Rule 9(b).

---

[25] Nor have Relators alleged that the submission of a single reimbursement claim was caused by Defendants' conduct. *See United States ex rel. Franklin v. Parke-Davis*, No. 96-11651, 2003 WL 22048255, at *4-5 (D. Mass. Aug. 22, 2003) (finding that a relator must show that defendant's alleged conduct was a "substantial factor" in the submission of a claim in order to establish causation). None of the Relators has alleged that Defendants' conduct was a substantial factor in the submission of reimbursement claims to the government.

[26] Relator Garcia even amended his complaint almost two years after he filed his original pleading, *see* 2006 Garcia Action, ECF No. 17, but failed to provide reliable indicia that Defendants' allegedly fraudulent conduct resulted in the submission of false claims.

**IV.     The Court should dismiss Relators Garcia and Kelly's claims of conspiracy and reverse false claims violations for failure to state a claim under Rule 12(b)(6).**

Allegations in a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if they fail to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a plaintiff must make sufficient factual allegations such that the court may reasonably infer "that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If a plaintiff fails to provide "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," dismissal is appropriate. *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotation omitted).

**A.     Relators Garcia and Kelly's conspiracy claims are fatally deficient and should be dismissed.**

Garcia and Kelly's claims under 31 U.S.C. § 3729(a)(3) for conspiracy to violate the FCA, *see* 2006 Garcia Compl. ¶¶ 51-54; 2012 Kelly Compl. ¶¶ 330-33, must also be dismissed because neither Garcia nor Kelly adequately alleges that Defendants participated in a conspiracy to defraud the government. To survive a motion to dismiss, a relator must allege facts sufficient to show that the defendants both "intended to defraud the government" and "'agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim.'" *United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 46 (1st Cir. 2009) (quoting *Allison Engine*, 553 U.S. at 672-73).

Relators Garcia and Kelly's bare conclusions that Defendants "knowingly conspired to defraud the United States . . . to violate the FCA . . . [and] to conceal their actions," 2006 Garcia Compl. ¶¶ 52-54; 2012 Kelly Compl. ¶¶ 331, fail to provide any facts that show the existence of an agreement, let alone an agreement to violate the FCA. *United States ex rel. Estate of Cunningham v. Millennium Labs.*, No. 09-12209, 2014 WL 309374, at *2 (D. Mass. Jan. 27,

2014) (dismissing conspiracy claim because the "Complaint includes no allegations of an agreement between defendant and any physician to defraud the government"); *see also United States ex rel. Ciaschini v. Ahold USA, Inc.*, 282 F.R.D. 27, 37 (D. Mass. 2012) ("Without specific information, [an] allegation of conspiracy is a mere label or legal conclusion entitled to no weight."). Accordingly, Garcia and Kelly's conspiracy claims must be dismissed. *See Allison Engine*, 553 U.S. at 673.

### B. Relators Garcia And Kelly's claims of reverse false claims violations are fatally deficient and should be dismissed.

Similarly, Garcia and Kelly's reverse false claims violations under 31 U.S.C. § 3729(a)(7), *see* 2006 Garcia Compl. ¶¶ 55-57; 2012 Kelly Compl. ¶¶ 334-36, must also be dismissed because neither Relator has alleged sufficient facts to support their allegations that Defendants avoided or decreased "an obligation to pay or transmit money or property to the Government." § 3729(a)(7). To survive a motion to dismiss, a relator must show that the defendant "did not pay back to the government money or property that it was obligated to return," *United States ex rel. Quinn v. Omnicare Inc.*, 382 F.3d 432, 444 (3d Cir. 2004), and that there was a "clear obligation or liability to the government." *United States ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505, 514 (E.D. Pa. 2010) (citations omitted). Neither Garcia nor Kelly alleges any facts suggesting that Defendants were clearly obligated to return any money or property to the government.[27] "Without an obligation [defendant] had nothing to avoid," such that relators' reverse false claims violation "must fail." *United States ex rel. Booker v. Pfizer,*

---

[27] Additionally, to the extent Relators argue that Defendants' "obligation" for reverse false claims violations stems from their failure to "refund the [allegedly] false claims that the government paid," *see Thomas*, 708 F. Supp. 2d at 514, such claims are necessarily redundant of the allegations concerning violations of § 3729(a)(1) and (a)(2) and must be dismissed for all the reasons discussed above. *See id.* at 514-15.

*Inc.*, 2014 WL 1271766, at *9 (D. Mass. Mar. 26, 2014).  Because Garcia and Kelly have not

pled sufficient facts to demonstrate a reverse false claims violation, their claims under

§ 3729(a)(7) must be dismissed.

**V.     The Court should dismiss all three actions with prejudice.**

Relators have already filed, collectively, five complaints.  Garcia filed his original

complaint in 2006 and then amended it in 2007.  *See* 2006 Garcia Compl., 2006 Garcia Action,

ECF No. 17.  Fauci sued in 2010.  *See* 2010 Fauci Compl.  Kelly sued alongside Garcia in 2006,

dismissed her part of that action in 2011, then filed a new complaint in 2012.  *See* 2012 Kelly

Compl.  And all three Relators filed a consolidated, amended complaint in 2014, which this

Court struck, after Defendants argued that Relators' significant delay was unexplained, undue,

and prejudicial and that amendment would be futile, given the application of the FCA's

jurisdictional bars.  *See* 2006 Garcia Action, ECF No. 114.  Especially in light of the Court's

rejection of their last attempt to amend, Relators should not be permitted to amend any further,

and dismissal should be with prejudice.  *See Karvelas*, 360 F.3d at 242 (affirming dismissal of

complaint with prejudice); *Gagne*, 565 F.3d at 48 (affirming denial of leave to amend because of

"relators' repeated failure to cure the deficiencies in their pleadings"); *United States ex rel.*

*Carpenter v. Abbott Labs., Inc.*, 723 F. Supp. 2d 395, 411 (D. Mass. 2010) (denying leave to

amend second amended complaint); *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F.

Supp. 2d 141, 147 (D. Mass. 2000) (dismissing complaint with prejudice for failing to comply

with Rule 9(b)).

**VI.    The Court should dismiss, or in the alternative decline to exercise jurisdiction over,
        Relators' state law claims.**

As demonstrated above, Relators' claims for relief under the FCA must be dismissed for

lack of jurisdiction and fatal pleading deficiencies.  The Court should dismiss Relators' state law

claims on the same grounds. *See, e.g.*, *New York v. Amgen Inc.*, 652 F.3d 103, 109 (state false claims acts "construed consistently" with the federal FCA because of the "substantive similarity" of the provisions); *see also* 2006 Garcia Compl. ¶ 20 (noting that state false claims statutes "closely track[]" the federal FCA).[28]

In addition, other procedural limitations bar a number of Relators' specific state law claims. Relators' Complaints are predicated on allegedly false claims that were purportedly submitted before the effective date of certain States' false claims act provisions.[29] To the extent Relators seek to assert claims based on state statutes that were not in existence at the time of their allegations, those claims must be dismissed. Similarly, Relators' claims under the Texas Medicaid Fraud Prevention Law, *see* 2006 Garcia Compl. ¶¶ 224-36; 2010 Fauci Compl. ¶¶ 267-72; 2012 Kelly Compl. ¶¶ 755-59, for conduct occurring prior to 2007 must be dismissed because the state did not intervene prior to the unsealing of the Complaints.[30]

Even if the Court finds that the state law claims are not subject to dismissal, it should nevertheless decline to exercise supplemental jurisdiction over them because all of the federal claims are subject to dismissal. *See* 28 U.S.C. § 1367. "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims." *Rossi v. Gemma*, 489 F.3d 26, 39 (1st

---

[28] Indeed, the state laws all contain a first-to-file rule and public disclosure bar analogous to the FCA's. *See* Appendix 2 (citing same and providing effective dates for each of the states named as plaintiffs in the 2006 Garcia Complaint, 2010 Fauci Complaint, and 2012 Kelly Complaint).

[29] The false claims act statutes in Colorado, Connecticut, Georgia, Indiana, Michigan, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, and Wisconsin were not enacted until after the fraudulent schemes supposedly began in 2003. *See* Appendix 2.

[30] *See* Tex. Hum. Res. Code Ann. § 36.104(b) (relators may proceed without state intervention only for conduct occurring on or after May 4, 2007).

Cir. 2007) (citation omitted).  Accordingly, this Court should decline to exercise supplemental

jurisdiction over Relators' state law claims pursuant to 28 U.S.C. § 1367.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss with prejudice the 2006 Garcia

Action, the 2010 Fauci Action, and the 2012 Kelly Action.


Dated:  June 17, 2014                                   Respectfully submitted,


                                                        /s/ Matthew J. O'Connor
                                                        Matthew J. O'Connor (BBO#631259)
                                                        Ronald G. Dove, Jr. (admitted *pro hac vice*)
                                                        COVINGTON & BURLING LLP
                                                        1201 Pennsylvania Avenue, N.W.
                                                        Washington, DC 20004
                                                        Tel.: (202) 662-5469
                                                        Fax: (202) 778-5469
                                                        moconnor@cov.com
                                                        rdove@cov.com

                                                        Elliot R. Peters (admitted *pro hac vice*)
                                                        David J. Silbert (admitted *pro hac vice*)
                                                        KEKER & VAN NEST LLP
                                                        633 Battery Street
                                                        San Francisco, CA 94111-1809
                                                        Tel.: (415) 676-2273
                                                        Fax: (415) 397-7188
                                                        epeters@kvn.com
                                                        dsilbert@kvn.com

                                                        *Attorneys for Defendant Genentech, Inc.*


                                                        /s/ Tracy A. Miner
                                                        Tracy A. Miner (BBO #547137)
                                                        Michael J. Ticcioni (BBO #676878)
                                                        Mintz, Levin, Cohn, Ferris,
                                                            Glovsky & Popeo, P.C.
                                                        One Financial Center
                                                        Boston, MA 02111
                                                        Tel.: (617) 542-6000

Fax: (617) 542-2241
tminer@mintz.com
mjticcioni@mintz.com

Michael A. Rogoff (admitted *pro hac vice*)
Debra E. Schreck (admitted *pro hac vice*)
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598
Tel.: (212) 836-7684
Fax: (212) 836-6615
mrogoff@kayescholer.com
dschreck@kayescholer.com

*Attorneys for Defendant Novartis*
*Pharmaceuticals Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2014, a true and correct copy of the foregoing document was served electronically on all registered counsel of record via ECF and is available for viewing and downloading from the ECF system, as well as by U.S. mail to those indicated as non-registered participants.

*/s/ Matthew J. O'Connor*
Matthew J. O'Connor (BBO#631259)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.: (202) 662-5469
Fax: (202) 778-5469
moconnor@cov.com


*On behalf of Defendants*
